# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| JOHN E. STEVENS, | ) |
| Movant, | ) ) ) |
| v. | ) Case No. CV414-014 |
| | ) CR411-199 |
| UNITED STATES OF AMERICA, | ) ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

John Stevens, who was convicted and sentenced for distributing cocaine, moves for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) The government opposes. (Doc. 7.)

## I. BACKGROUND

In 2011, a Panamanian drug-trafficker notified an undercover Immigration and Customs Enforcement ("ICE") agent that a large shipment of cocaine was in route to Savannah, Georgia aboard a container ship. (Presentence Investigation Report ("PSI") at 3.) He directed the agent to retrieve the cocaine and transfer it to a drug courier

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV414-014. "Cr. doc." refers to documents filed under movant's criminal case, CR411-199.

named Level Cummings (actually defendant John Stevens), who was headed to Savannah from the Washington, D.C. area. (*Id.*) As soon as the ship arrived, law enforcement officers located 3.45 kilograms of powder cocaine. (*Id.* at 4.) The undercover agent contacted his Panamanian "employer" and told him that he had retrieved the cocaine and was ready to deliver it to the courier. (*Id.*) Stevens and an accomplice, Walkes Ernesto Crosdale, met with the undercover agent at a hotel in Pooler, Georgia. (*Id.*) After Stevens took possession of the cocaine, he and Crosdale were arrested. (*Id.*)

Stevens admitted his involvement and assisted law enforcement agents by traveling to Baltimore, where he delivered a package containing a mixture of real and counterfeit cocaine to another accomplice, Letroye Barber, who was also arrested. (*Id.*) Stevens elected to plead guilty, but at his Fed. R. Crim. P. 11 change of plea proceeding, he persisted in identifying himself as "Level V. Cummings." (*Id.* at 5; cr. doc. 38 at 3 (Rule 11 hearing where Stevens identified himself as "Level Vashoun Cummings.")) Based on this false statement under oath, the PSI recommended that Stevens' United States

Sentencing Guidelines ("USSG") range be adjusted upward for obstruction of justice and that he be denied a downward adjustment for acceptance of responsibility. (PSI at 5.) Given his criminal history and the total offense level, the Guidelines range was 87 to 108 months. (*Id.* at 14.) The Court sentenced Stevens to serve 87 months' imprisonment, at the low end of the guideline range. (Cr. doc. 39 at 22.)

On appeal, Stephens claimed that the Court's denial of a minimal-role sentencing reduction was error.[2] *United States v. Stevens*, 493 F. App'x 32, 33 (11th Cir. 2012). The Court of Appeals, in an abbreviated opinion, swept the claim aside:

> To obtain a further downward adjustment for a minimal role, Stevens had to prove that he was "plainly among the least culpable of those involved" in the conspiracy, as evidenced by a "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *Id.* § 3B1.2 cmt. n. 4; *see*

---

[2] Note that Stevens *did* get a two point reduction for his minor participant status under USSG § 3B1.2(b). To receive a four point reduction as a *minimal* participant, he needed evidence showing that he was the least culpable of those involved in the conduct of the drug-distribution group. USSG § 3B1.2(a) & notes. One generally must lack knowledge or understanding of the scope and structure of the enterprise to win the additional two point reduction. Here, all of the evidence, including Stevens' sworn admissions during his plea colloquy, show that he knew exactly what he was doing. He was a conduit in a cocaine pipeline, and he received direct instructions from a high-level drug distributor to pick up a large quantity of cocaine (he admits that he knew it was cocaine) and to deliver it to another person in Baltimore. (Cr. doc. 38 at 23.)

> *United States v. Rodriguez De Varon,* 175 F.3d 930, 941–46 (11th Cir.1999). That Stevens served as a drug courier is not dispositive; instead, we look at his relevant conduct. *Rodriguez De Varon,* 175 F.3d at 940–42. Of the four participants, Stevens had a lesser role than the supplier, but Stevens failed to introduce any evidence that his conduct was less significant than the conduct of either Crosdale or Barber.

493 F. App'x at 33. It thus affirmed this Court's sentence.

Stevens then timely filed the instant § 2255 motion, raising several claims for relief: (1) his attorney rendered ineffective assistance of counsel ("IAC") by failing to adequately investigate facts that would have demonstrated his minimal role in the offense; (2) he was denied effective assistance because his attorney failed to advise him that the use of an alias constituted obstruction of justice under the USSG and would deprive him of any benefit from acceptance of responsibility; (3) counsel "knowingly" advised him to plead under the wrong name and identity; (4) he was denied his right to confront witnesses and his right to effective assistance of counsel because he was not provided a copy of the PSI 35 days before sentencing; (5) counsel rendered IAC by failing to object to PSI facts (including his false name) and by advising him that if he objected to the PSI it would force the plea agreement to be withdrawn;

(6) his statutory rights were violated because the PSI was never made part of the record and was not filed with the Court seven days before sentencing; (7) counsel again "knowingly" allowed him to be sentenced under an alias; (8) counsel failed to move to withdraw the plea made under the wrong name and identity; and (9) counsel somehow erred by failing to contest the Court of Appeals' rejection of the minimal role defense on the assumption that there were four co-defendants, when there were only two and a federal agent, and Stevens played the most minimal part. (Doc. 1 & 2.)

## II. ANALYSIS

Stevens is an established liar. As such, it is unsurprising that many of his claims either lack supporting evidence or are plainly contradicted by the record. Even now, years after his conviction and sentence, he has not alleged any facts, much less proffered sworn evidence, supporting his claim that he was a *minimal* player in the criminal enterprise. Which witnesses should his attorney have subpoenaed? What evidence existed suggesting that he was merely a bit player in a larger criminal enterprise and lacked any "knowledge or

understanding of the scope and structure of the enterprise and of the actions of others?" *Stevens*, 493 F. App'x at 33. Stevens doesn't say, even in his sworn declaration. (Doc. 3 at 2 ("I informed my Attorney of the facts in my case that justified a minimum role reduction. However, my attorney failed to investigate or present evidence at sentencing on this subject.").) He simply wants the Court to accept his assurances that if his attorney had looked under enough rocks, he would have found the evidence he needed to support the claim. The Court of Appeals was not impressed with this argument, and neither is this Court. *Stevens*, 493 F. App'x at 33. Similarly, the Court rejects out of hand Stevens' assertion that the Court of Appeals misstated the number of participants in the offense conduct. His participation was evaluated based upon those of the other conspirators -- the Panamanian drug distributor, Crosdale, and Barber. *Id.* Hence, it correctly identified four participants and noted that Stevens failed to introduce evidence showing that his participation was "less significant than the conduct of either Crosdale or Barber." *Id.* He has not remedied that failure in his current filings. So, his IAC claim fails on the merits.

Stevens blames his attorney for failing to advise him that it was a bad idea to lie under oath to a court of law. That's just laughable. Not only had Stevens obtained a fraudulent identification, but he also lied to law enforcement officers, to the undersigned at a bond hearing, to the trial judge, and to his own attorney about his own name.³ (Doc. 3 at

---

³ Stevens states in an unsigned, thus unsworn and evidentially inadmissible, pleading that his attorney, Dow Bonds, "knowingly" counseled him to plead guilty and be sentenced under a false name. (Doc. 1 at 4.) Stevens, however, was not sentenced under a false name. By his own sworn admission, the government discovered his true identity by November 15, 2011. (Doc. 3 at 2.) His sentencing was held under the name "John E. Stevens" on March 14, 2010. (Cr. doc. 39 at 1-4.) His sworn declaration also undermines his assertion that his attorney "knowingly" counseled him to plead under a false name. He states in his 28 U.S.C. § 1746 objection that prior to the preparation of Stevens' PSI, which properly identified him as Stevens, *not* Cummings, Bonds had "never made any inquiry into my identity prior to the discovery of my real name by Probation during the preparation of my Pre-sentencing Investigation Report." (Doc. 3 at 1.) Bonds stated at sentencing that "at no time was I privy to any of that information, and certainly would have brought that to the Court's attention had I know[n] differently, and would have essentially helped save him from himself." (Cr. doc. 39 at 8.) The government has also submitted an affidavit from Bonds affirming the fact that he was unaware of Stevens' true identity. He swears that Stevens had always represented to him that he was Level V. Cummings. (Doc. 7-1 at 2 (eventually, U.S. Probation Officer Matthew Gill discovered that Stevens was using a false identity).)

Stevens is free to supplement his objections to this Report and Recommendation with a declaration, under penalty of perjury, that Bonds knew of his identity prior to its discovery by federal agents. *See* 28 U.S.C. § 1746. He is advised, however, that lying under oath, either live or "on paper," is illegal and may result in a separate prosecution for perjury. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (defendant's falsely subscribed-to statement in his habeas petition that he had not previously filed a § 2255 motion was "material" for purposes of perjury prosecution; statement fooled the clerk of the court into accepting the "writ" for filing, and led the magistrate judge to consider its merits until she discovered that the "writ" was a successive § 2255 motion in disguise); *United States v. Dickerson*, No. CR608-36,

7

1-2.) He also lied to the Court about his criminal history. (Cr. doc. 38 at 9.) When he swore "to tell the truth, the whole truth, and nothing but the truth," he knew very well that his failure to do so might result in serious consequences. The record suggests that Stevens was willing to accept those consequences until he found out that if he proceeded as Mr. Level Cummings, things might have turned out worse for him:

> Had he continued on as Mr. Level Cummings he actually would have had a worse criminal category, or had more convictions. I don't know where -- there was some point during the bond issue where it was stated that the government wasn't aware of anything -- I don't

---

doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), *cited in Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009; *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).

Should Stevens force a "swearing match," it is worth noting that even his declaration under penalty of perjury contains misstatements that will merit further inquiry. For instance, he states that his attorney failed to argue at sentencing that he used the false name simply to protect others from harm and that he failed to argue that he was still worthy of receiving the two point acceptance of responsibility USSG reduction. (Doc. 3 at 2.) Bonds argued those matters at length during sentencing. (Cr. doc. 39 at 5 ("[t]he defendant felt at the time that he needed to use his false identity . . . to insulate himself and his family, I guess from the seriousness -- not only the seriousness of the risk he was taking in undergoing this criminal activity, but also to protect him and his family from any risk of harm"); *id.* at 6 ("he had indicated to me that he had seen other people murdered as a result of their cooperation with the government, and he was personally fearful of this"); *id.* at 9 (arguing that he still merited a two point downward adjustment for acceptance of responsibility because Stevens "did truthfully admit all of the conduct that he participated in and conspired to do relating to this drug transaction. . . . I think it's also worth pointing out that he did instantly agree to cooperate with authorities at the time he was arrested, and take it a step further and help them apprehend another individual.").)

know if they had the information, and I haven't reviewed what Mr. Gill has uncovered, but I believe Mr. Level Cummings has a worse situation criminally. . . .

(Cr. doc. 39 at 11.)

Stevens states in his sworn declaration that he used an alias to protect his family from reprisal. (Doc. 3.) Even accepting that explanation, he has not shown any substantiated threat. And it still doesn't excuse his lies to this Court. As the sentencing judge explained:

> Well, what is the evidence before this Court of any risk of harm? As I understand the case -- and you're talking about the defendant and his family. As I understand, the defendant's father and stepfather are deceased. He wasn't living with his mother. She had nothing to do with this. He was apparently living with a girlfriend. He has a son that was not living with him that was from some previous relationship. I don't know of anything in this case that shows that he has any legitimate fear of harm as far as any family member, as far as any threat or anything of that nature.

(Cr. doc. 39 at 5-6.) Furthermore,

> whatever he thought in his mind in the first place wasn't right, it wasn't correct, okay? Once he had made this plea, once he had agreed to plead guilty and he came before this Court, there was no reason for him to then say, my name is Cummings and I have never been arrested, when in – or convicted, when in fact his name was not Cummings, it was Stevens. There was no reason not to disclose that to the Court. And not disclosing it to an arresting officer, or not disclosing to somebody during an investigation is one thing; but when you make a decision to plead guilty and you come before the Court and you're sworn and you take an oath, and you're told at that

Rule 11 proceeding that if you don't tell the truth you'll be committing perjury for which you could be subjecting yourself to additional time of imprisonment.[4] And he says, I understand that, and he takes an oath and says, I'm going to freely and voluntarily tell the truth to this Court, and he lies to the Court. He lies to the Court about his name and his true identity, and he lies to the Court about whether or not he has a previous criminal record.

Now, whatever went on in his mind before that day in court, he clearly understood when he came to court that day, according to his own testimony, what his obligation was to tell the truth. And I know you're his lawyer and you're doing the best you can for him, Mr. Bonds, but there's no excuse for the conduct that he committed during the Rule 11 proceeding

(*Id.* at 7 (footnote added).)

Similarly, Stevens' claim that counsel erred by failing to move to withdraw the plea made under a false name (ground 8) fails. Stevens has offered no legal authority for the proposition that withdrawing the plea, which had already been entered under a false name, would have somehow remedied his *multiple* under-oath lies to this Court. Steven's IAC claims

---

[4] Providing a materially false statement to a judge or magistrate judge is all that is required to receive a sentencing enhancement under USSG § 3C1.1. *See id.* & notes; *see also United States v. Ruff*, 79 F.3d 123, 125-26 (11th Cir. 1996) (explaining that false statements to a law enforcement officer only count as § 3C1.1 obstruction when they impede the investigation or prosecution of a case, whereas *any* materially false statement to a judge invokes the sentencing enhancement). Lying under oath also undermined any attempt at obtaining a favorable adjustment for accepting responsibility for his actions. *See* USSG § 3E1.1 & notes (an adjustment is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial).

against his attorney for failing to find evidence supporting a minimal role reduction, advise him not to lie under oath, and "cure" those lies by withdrawing the plea (grounds 1, 2, 3, 5 (to the extent he claims that Bonds erred by failing to object to his use of a false name to probation officers), 7, 8, and 9) must be denied because Stevens has neither shown that his attorney rendered deficient performance nor demonstrated any resulting prejudice.[5] If anything, Bonds went above and beyond the call

---

[5] Stevens' ineffective assistance of counsel claims require the Court to apply the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, the defective performance must have prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Stevens must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

For the prejudice prong Stevens must show that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the

of duty by offering every conceivable reason he could think of to undo the mess Stevens created for himself. (*See generally* cr. doc. 39.)

The first portion of Stevens' ground 4 claim, that he was denied the right to confront witnesses because he was not provided a copy of the PSI 35 days before sentencing, and the entirety of his ground 6 claim that his statutory rights were violated because the PSI was not filed with the Court seven days before sentencing,[6] are procedurally defaulted, since they were not raised before the Court of Appeals.[7] Moreover, the record

---

outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

[6] He also claims that it was error for the Court to fail to make the PSI part of the record. (Doc. 2 at 2.) Federal Rule of Criminal Procedure 32(g), which he relies upon, does not demand that the PSI be made part of the record. That document is maintained by the probation office. It contains sensitive information and is rarely, if ever, made part of the official record of a criminal case.

[7] As the Eleventh Circuit explained:

> A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). A claim is procedurally defaulted even if it was foreclosed explicitly by existing circuit precedent at the time of the defendant's direct appeal. *McCoy v. United States*, 266 F.3d 1245, 1258–59 (11th Cir. 2001) (noting that perceived futility does not constitute cause to excuse a procedural default).

*Hill v. United States*, 542 F. App'x 770, 771-72 (11th Cir. 2013). "Defendants can avoid the procedural bar by establishing that either of the following exceptions applies: (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence." *Id.*

reflects that counsel received the first draft of the PSI on February 2, 2012, more than 41 days prior to sentencing. (PSI at 1.) Bonds states in his attached affidavit that he mailed a copy of the PSI to Stevens on February 7, called Stevens to discuss any portions of the PSI he thought were objectionable, and then submitted written objections on February 17, 2012. (Doc. 7-1 at 3.) Stevens has not submitted any sworn evidence contravening these facts. Hence, the unrebutted facts show that the report was timely delivered to Bonds, Bonds promptly forwarded it to Stevens, and they discussed it at length.[8] And even if the PSI was untimely, either in its initial or final form, Stevens has not shown any resulting prejudice. Hence these claims (grounds 4 and 6) fail.

The first portion of ground 5, asserting that counsel was ineffective by failing to object to certain PSI facts, is conclusory. Movant never states which factual assertions were wrong. (Doc. 2 at 1.) In his declaration, he simply states that he "informed [Bonds] that essentially[] all the information contained in [the PSI was] wrong and would need to be

---

[8] Stevens also stated, under oath, that he had an opportunity to read and discuss the PSI and its addendums with his attorney. (Cr. doc. 30 at 4.)

corrected." (Doc. 3 at 2.) Such a threadbare assertion is not enough to merit a hearing, much less § 2255 relief.[9]

Finally, Stevens claims Bonds told him that if he objected to the PSI, the Court would withdraw the plea agreement. (Doc. 2 at 1 (Bonds "falsely stated to the Movant that if he objected to the PSI, it would force the withdrawal of his Plea Agreement and compel him to go to trial."); (doc. 3 at 2 (swearing under penalty of perjury, that Bonds "advised me that at that time, if we filed an objection to the PSI in order to correct the information contained in it, that it would void my plea and I would be required to go to trial.").) Again, Stevens has failed to state which facts were objectionable in the PSI. Moreover, the record shows that Bonds *did* object to the PSI. (PSI addendum.) He objected to the obstruction of justice enhancement, the denial of a downward adjustment for acceptance of responsibility, and the total offense level. (*Id.*) This

---

[9] No hearing is required when a movant alleges no facts to establish truth of his claims beyond bare conclusory allegations. *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973). *See Bartley v. United States*, 2013 WL 6234694 at * 2-3 (S.D. Ga. Dec. 2, 2013) (§ 2255 claims bereft of argument and citation to the record may be denied on pleading-deficiency grounds alone); *see also Johnson v. Razdan*, 564 F. App'x 481, 484 (11th Cir. Apr. 30, 2014) ("Although pro se briefs are to be construed liberally, a pro se litigant who offers no substantive argument on an issue in his initial brief abandons that issue on appeal.").

claim, then, is both conclusory, in that Stevens has failed to identify which facts in the PSI he faults Bonds for failing to object to, and in contravention of the record, since Bonds did file objections to the PSI.

III. CONCLUSION

For the foregoing reasons, Stevens' § 2255 motion (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this _19TH_ day of November, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA